# CASES

IN THE

# SUPREME JUDICIAL COURT

FOR

THE COUNTY OF OXFORD, MAY TERM, 1833.

---

## *The inhabitants of* PERU *vs. The inhabitants of* TURNER.

The admissions, either by acts or declarations, of the overseers of the poor of a town, cannot have the effect to *change the settlement* of a pauper from one town to another.

The town of P. by vote, agreed to accept a pauper as an inhabitant, on *condition*, that the town of T. would relinquish *all demands* against the former town. Nearly six years afterward, the latter town accepted the proposition, and tendered to the town of P. a note, that being the only demand it held against that town. This was held to be an *unreasonable delay*, and that the tender was wholly inoperative to revive the proposal and render it binding on the town of P.

THIS was an action of assumpsit, brought for the recovery of a sum of money expended by the plaintiffs for the support of *Sally Turner*, a pauper, whose settlement was alleged to be in the town of *Turner*. The general issue was pleaded and joined.

That the pauper stood in need of relief in the town of *Peru*, — that she was furnished with supplies to the extent set forth, — and that notice was seasonably given to *Turner*, and seasonably answered by that town, denying the settlement of the pauper to be in that town, were facts admitted.

For the plaintiffs, *Robinson Turner*, the father of the pauper testified, that she was forty-one years of age. — That he moved into *Turner*, in 1793, where he resided until 1810. — That, while there he occupied a farm of fifty acres, which was his own property in fee, from which he supported his family; that he had besides neat stock, and that he regularly paid taxes in *Turner*, during his whole residence there. — That, in 1810, he removed to *Livermore*, and in two and a half years afterward, removed to *Peru*, then a plantation, where he had ever since resided. — That while the pauper was between 17 and 18 years of age, she had a fall from a horse, which was followed by a fit of sickness; since which time she had been at times *deranged*, especially for the last two years. — That the pauper became 21 years of age while he lived in *Livermore*, and had not since that time lived in his family.

For the defendants, it appeared in evidence that on the 7th *of September*, 1822, *Turner* notified *Peru*, that the pauper was in distress in the former town and in need of relief, and that *Turner* had incurred expenses for her support; — alleging that her settlement was in *Peru*, and requesting the latter town to reimburse the expense and to remove her. It did not appear that *Peru*, which was incorporated *February* 5, 1821, ever returned any answer to this notice. The overseers of the town of *Turner*, however, caused her removal to *Peru*, *March* 18, 1823; and thereupon, on the 29th *of July*, 1823, the overseers of the town of *Peru*, gave a note to the town of *Turner*, for the expenses previously incurred by *Turner* for her support and removal. The note was as follows, *viz.* :

" *Peru, July* 29, 1823. For value received in a debt due to
" the town of *Turner*, for keeping *Sally Turner*, *a pauper*, *charge-*
" *able to the town of Peru*, we the undersigned, overseers of the
" poor for the town of *Peru*, promise to pay the town of *Tur-*
" *ner*, the sum of ninety-five dollars and five cents, in one year
" from this date with interest. And by these presents bind our-
" selves and our successors in office to pay the same.

" *Enoch Jaquis*,  &#125;  Overseers of the poor for
" *James Lunt*,  &#125;  the town of *Peru*."

*Peru* continued to support the pauper, when she needed it, until they set up the claim controverted in this suit.

*September* 18, 1823, the defendants in town meeting duly voted, that if *Peru* would adopt the pauper as their inhabitant, the town agent of *Turner* might relinquish to *Peru* the *whole* or a *part* of said note. *April* 11, 1825, *Turner* also duly voted, that their town agent relinquish to *Peru* the *whole* of said note, if *Peru* would adopt the pauper as an inhabitant of that town. And on the 28th *of May*, 1825, *W. K. Porter, Esq.* agent for *Turner*, made to *Peru* the following communication, *viz.*

" If the town of *Peru* will pass a vote, at a legal meeting of " its inhabitants, to admit *Sally Turner*, a pauper, residing in said " *Peru*, to be a legal inhabitant thereof, having inserted an art- " icle in their warrant to that effect, for calling said meeting, and " will produce to me a copy of the warrant and return thereon, " and also a copy of the vote passed at said meeting admitting " the said *Sally*, all duly authenticated, I then by virtue of au- " thority placed in me, by the town of *Turner*, hereby agree " to relinquish and give up to said *Peru* the sum of *eighty dol-* " *lars* on the note which the town of *Turner* holds against the " town of *Peru.*"

*September* 12, 1825, *Peru* duly voted to accept the pauper as their inhabitant, if *Turner* would relinquish the *whole of their demands against Peru*. But *Turner* did not tender to *Peru* the note aforesaid until *May* 2, 1831.

*Levi Ludden*, who was agent for the town of *Peru* in 1828, testified for the plaintiffs, that in that year he had a conversation with *W. K. Porter, Esq.* then agent for *Turner*, respecting this pauper, and that in that conversation *Porter* told him that *Peru* must pay the note aforesaid, or comply unconditionally with his written proposition of *May* 28, 1825. The testimony of *Ludden* was objected to, but admitted by the presiding Judge.

A verdict was taken for the plaintiffs, subject to the opinion of the whole Court. If that should be, that the plaintiffs had made out their case by competent proof, judgment was to be rendered on the verdict, otherwise the verdict was to be set aside, and the plaintiffs to become nonsuit.

*Greenleaf* and *Porter*, for the defendants.

1. The pauper having been a lunatic, or at times insane, from the age of 17 or 18, was never emancipated from her father, but acquired a settlement with him when *Peru* was incorporated, *Feb.* 5, 1821.. *Upton v. Northbridge*, 15 *Mass.* 237 ; *Buckland v. Charlemont*, 3 *Pick.* 173.

2. The notice to *Peru* which was not answered — the subsequent removal of the pauper, and the adjustment of the claim for her support, *estop* the plaintiffs from denying that her settlement is in that town. This case is clearly distinguishable from the case of *Turner v. Brunswick*, 5 *Greenl.* 31. It is a well known rule that a case must be understood and interpreted by the facts in that case. Now in that case there was no proof that the pauper lived in or belonged to *Brunswick*, nor was there proof as in this case, of a *removal* and *adjustment*.

The plaintiffs are also *estopped* to deny the settlement of the pauper in *Peru*, by the direct admission to that effect, by the overseers of *Peru*, in their note to *Turner*. These admissions were made under a perfect knowledge of all the circumstances of the case. *Burlington v. Calais*, 1 *Vermont Cases*, 385; *Quincy v. Braintree*, 5 *Mass.* 86; *Bridgewater v. Dartmouth*, 4 *Mass.* 273; *Abbot v. 3d School District in Hermon*, 7 *Greenl.* 118; *Maine Laws*, 2, 542.

The plaintiffs are also *estopped* by their vote adopting the pauper as an inhabitant. It is not conditional, but in effect absolute, when taken in connection with the previous vote of *Turner*. One makes a proposal, and the other accepts.

The declaration of the agent of *Turner* should not prejudice the rights of that town, if in making them he transcends his authority. *American Fur Co. v. United States*, 2 *Peters' Rep.* 358 ; *Gibson v. Coult*, 7 *Johns.* 391.

If it was necessary to make a tender of the note, the case finds, that one was made before the commencement of this action.

*Fessenden & Deblois*, for the plaintiffs, cited the following authorities. *Wilbraham v. Springfield*, 4 *Mass.* 493 ; *Wis-*

casset v. *Waldoborough*, 3 *Greenl.* 388 ; *Buckland v. Char-*
*lemont*, 3 *Pick.* 173 ; *Turner v. Brunswick*, 5 *Greenl.* 31.

MELLEN C. J. delivered the opinion of the Court.

It is proved that the father of the pauper gained a settle-
ment in *Turner*, by a residence in that town for more than ten
years, and payment of all taxes assessed upon him and his
property during all that time.  This point in the cause has not
been contested on the part of *Turner* ; of course the pauper,
who was a minor when her father resided in *Turner*, gained a
derivative settlement there also, and still retains it, unless she
has since gained a new settlement in *Peru*, under her father,
he having resided in that town at the time of its incorporation.
It has been contended that she was incapable of gaining a set-
tlement in her own right, on account of mental disability and
derangement, and, of course, must be considered as an infant in
this respect — we do not, however, consider the authorities
cited, as applicable to the present case.  She has never been a
member of his family, since he resided in *Livermore*, which was
prior to his removal to *Peru*.  Besides, the evidence of inca-
pacity is of a very feeble character. — The injury she sustained,
happened several years since, soon after which she had a fit of
sickness, and was *at times* deranged, especially *two years ago* —
that is, in 1830 and 1831.  There was no such permanent ab-
sence of intellect or reason as would incapacitate her to gain a
settlement in her own right.  Neither do we think that *Peru*
is estopped to deny the settlement of the pauper to be in that
town, on account of the omission to answer the notice which
was given by *Turner*.  We consider the case of *Turner v.*
*Brunswick*, as decisive of this objection.  We particularly re-
fer to that case for the reasons of our opinion.  We do not
view the circumstance of the removal of the pauper to *Peru* as
creating any distinction between the two cases, as to the prin-
ciple of estoppel.  It is however contended that certain trans-
actions on the part of the overseers of *Peru*, have estopped
that town to deny their liability to support the pauper. — There
are many acts which the overseers of a town may do, which
will bind the town, though no special authority is given by the

town for the purpose.  From the necessity of the case, they may, by virtue of their office, make contracts for the support of the poor, and transact a variety of business in relation to their regulation and employment.  In all which transactions, however, they are acting within the scope of their official duty ; but they have no authority by their mere acts or declarations to change the settlement of a pauper from one town to another ; and confess away the rights of their town, and subject it to liabilities and burdens by any of their arrangements.  This is no part of their duty.  Though the overseers of *Peru* gave the note for $95,05 to *Turner,* and therein acknowledged that the pauper was chargeable to *Peru,* that confession, or that act did not establish her settlement in *Peru.*

A town at a legal meeting, the warrant for calling which contained an article for the purpose, may by a vote admit a person an inhabitant of such town.  Has *Peru* admitted the pauper as such ?  In *September,* 1823, and again in *April,* 1825, *Turner,* by legal votes, made certain *conditional* proposals to *Peru;* but the agent of *Turner,* though authorised to communicate *those* proposals to *Peru,* did not do it, but made a *conditional* proposal *less favourable* to *Peru.*  This proposal was not accepted by *Peru.*  Some months afterwards *Peru* voted to accept the pauper as an inhabitant, *on condition* that *Turner* would relinquish to *Peru all demands* against that town.  Thus far the towns had not *agreed* on any terms of arrangement.  The proposition of *neither* town had been accepted by the *other.*  This vote of *Peru* was passed *September* 12, 1825.  From that time there was a profound silence.  *Turner* took no notice of the vote by any corporate act, but on the 21st of *May,* 1831 — almost six years afterwards — the original agent of *Turner,* tendered the note to *Peru.*  Was this reply to the offer of *Peru* of such a character, and given under such circumstances, as to create a binding obligation on the town of *Peru?* or was the tender of the note so *unreasonably* delayed, as that it cannot be considered as closing any contract between the towns ?  In our opinion the delay was an *unreasonable* one and the tender wholly inoperative — having had no effect on the offer made nearly six years before, — why an acceptance of the offer was

not resolved upon and communicated before to *Peru,* does not appear on the report ; but the motive may at least be conjectured to be, that in 1830 and 1831, the pauper became *more frequently deranged,* and the probability of her becoming more and more expensive to the town of *Turner* was evidently increasing. We consider the declarations of *Mr. Porter,* the agent, as of no importance or influence in the decision of the cause, and therefore the question, whether the testimony of *Ludden* as to those declarations was admissible or not, ceases to have any interest, and it does not require an answer.

*There must be judgment on the verdict.*